IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**AUDIE DENVER WHEELER,**

    **Petitioner,**

**v.**     **Civil Action No. 1:14cv36**
     **(Judge Keeley)**

**RUSSELL A. PERDUE, Warden**

    **Respondent.**

## REPORT AND RECOMMENDATION

### I. Background

On March 4, 2014, the *pro se* petitioner, Audie Denver Wheeler, an inmate formerly incarcerated at FCI Gilmer in Glenville, West Virginia,[1] filed an Application for Habeas Corpus Pursuant to 28 U.S.C. §2241, *inter alia,* seeking the restoration of 324 days of Good Conduct Time Credits ("GCT"). The petitioner paid the filing fee on March 5, 2014. On April 29, 2014, the undersigned made a preliminary review of the petition and determined that summary dismissal was not warranted. Accordingly, an Order to Show Cause was issued against the respondent. On May 27, 2014, the respondent filed a Motion to Dismiss or for Summary Judgment and Response to Order to Show Cause. On May 28, 2014, a Roseboro Notice was issued. On June 19, 2014, the petitioner filed a response, titled Motion to Strike Motion to Dismiss as Non-Responsive/Legally Insufficient or Reply/Objections to Petition for Habeas Corpus Pursuant to 28 U.S.C. §2241.

### II. Facts[2]

---

[1] Petitioner is presently incarcerated at FCI Berlin, in Berlin, New Hampshire.

[2] The facts and details of petitioner's underlying criminal case can be found on PACER at 4:00cr50032-1, United States District Court for the Eastern District of Michigan.

1

After a thirteen-day jury trial[3] in the Eastern District of Michigan, on October 26, 2000, the petitioner was convicted of Count One of a Fifth Superseding Indictment, Conspiracy to Distribute Marijuana, in violation of 21 USC §§846 and 841(a)(1); Count Two, Possession with Intent to Distribute Marijuana, Schedule I Controlled Substance, Aiding and Abetting, in violation of 21 USC §841(a)(1) and 18 USC §2; Count Three, Felon in Possession of Firearms and Aiding and Abetting, in violation of 18 USC §§922(g) and §2; Count Five; Felon in Possession of Firearm, in violation of 18 USC §922(g); Count Six, Felon in Possession of a Firearm and Aiding and Abetting, in violation of 18 USC §§922(g) and §2; Count Seven, Felon in Possession of Firearm, in violation of 18 USC §922(g); Count Eight, Felon in Possession of Ammunition and Aiding and Abetting, in violation of 18 USC §§922(g) and 2.

Petitioner's sentencing began on February 23, 2001, and was continued to May 24, 2001, when he was sentenced to a term of imprisonment of 365 months and four years supervised release on Count One; 120 months imprisonment and four years supervised release on Count Two and 3 years supervised release on Counts Three, Four, Five, Seven and Eight, to run concurrently, along with a $600 special assessment.

After petitioner filed an unsuccessful direct appeal, a motion to vacate pursuant to 28 USC §2255, and an unsuccessful appeal of the Order denying it, petitioner's sentence was twice reduced, pursuant to government motions, first by Order entered on November 4, 2011, to 293 months, and then by Order entered on December 11, 2013, to 221 months.[4] The BOP's online Inmate Locator indicates that petitioner's expected release date is April 20, 2017.

---

[3] Prior to trial, the government dismissed count nine, which had charged Wheeler with witness tampering in violation of 18 U.S.C. § 1512(b). United States v. Wheeler, 67 F. App'x 296, 298-99 (6th Cir. 2003).

[4] See (E.D. Mich. Dkt.# 228 and 230)(4:00cr50032-1).

### III. Contentions of the Parties

#### A. The Petition

According to the petitioner's statement of the case, on April 7, 2013, while incarcerated at FCI Fort Dix, in Fort Dix, New Jersey, his cell was randomly searched;[5] "two cell phones and related contraband" were found.[6] Accordingly, later that day, petitioner received an incident report charging him with the Prohibited Act of Possession of an Unauthorized Item, possession of two cell phones, in violation of Bureau of Prisons ("BOP") Code 108.[7]

A Unit Discipline Committee ("UDC") hearing was held on April 8, 2013.[8] At the hearing, petitioner admitted to possessing the phones, but contested the incident report's stating there were three cell phone chargers, contending that there were only two; further, he stated that the reason he had the smartphone was that his stepdad had cancer.[9] Based on the facts stated, petitioner's admission, and the supporting documentation, the investigation concluded petitioner had been properly charged, and he was charged with the violation of Offense Code 108, Possession of a Hazardous Tool.[10] Due to the seriousness of the charges, the report was referred to a Disciplinary Hearing Officer ("DHO").[11] Petitioner was given notice of his rights, and

---

[5] Dkt.# 1 at 6.

[6] A copy of an April 7, 2013 Incident Report attached to petitioner's complaint describes the items as "two cellular phones and three cellular phone chargers. One cell phone was a virgin mobile (Kyocera) and the other phone was a LG smart phone with Google." Dkt.# 1-1 at 2.

[7] Dkt.# 1 at 6.

[8] Dkt.# 1-1 at 2.

[9] Id.

[10] Dkt.# 1-1 at 3.

[11] Id.

advised that a DHO hearing would be scheduled.[12] He waived his right to have a staff representative and to call witnesses.[13]

The DHO hearing was held on April 17, 2013.[14] At the hearing, petitioner admitted the charge.[15] The DHO found that the petitioner had committed the prohibited act[16] and sanctioned him: five years' loss of telephone and email privileges;[17] forfeiture of 324 non-vested good time credits; loss of 40 days of vested good time credits; 90 days loss of commissary and visitation privileges; and 30 days of segregation in the Special Housing Unit ("SHU").[18]

The petitioner appealed the findings and sanctions, alleging that the punishments were unlawful and excessive, and that the Disciplinary Hearing Officer ("DHO"), an African-American, imposed them based on his stated personal bias and prejudice toward petitioner's Caucasian ethnic group.[19] Petitioner's appeals were rejected.[20]

The petitioner asserts that even though he immediately took responsibility for the cell phones when they were found; had never received a single incident report in the entire 13 years of his present incarceration; and, consistent with his prior admission, pled guilty at the disciplinary hearing, he was still given a much more severe punishment than other prisoners who

---

[12] Dkt.# 1-1 at 5.

[13] Dkt.# 1-1 at 4.

[14] Dkt.# 1-1 at 7.

[15] Dkt.# 1-1 at 7.

[16] Dkt.# 1-1 at 7 – 9.

[17] Petitioner contends that other "similarly situated inmates only lost 18-months [sic] of such privileges." Dkt.# 1 at 11.

[18] Dkt.# 1-1, §VI at 9.

[19] Dkt.# 1 at 7 - 8 and Dkt.# 1-2 at 2-3.

[20] Dkt.# 1 at 8.

4

committed the same "Code 108" offense.[21] He contends that the DHO told him that it was a "bad time for someone like you (a person of caucasian [sic] descent) to get caught with a cellular telephone, because the Arian [sic] Brotherhood had just used a cellular telephone to have a warden killed as well as had a Unit Team staff member assaulted in Colorado."[22] Petitioner avers that even though he had nothing to do with the Aryan Brotherhood or the incident in Colorado, the DHO told him he was going to make an example out of him so that "inmates like" him wouldn't do something like this again.[23]

Petitioner contends that as a result, his vested and non-vested good conduct credits were unlawfully revoked, in violation of BOP Program Statement 5270.09. Petitioner further asserts that both prior to and after his disciplinary hearing, "numerous African-American inmates with similar incident reports received much less severe sanctions than that imposed on" him.[24] Likewise, he contends that Hispanic inmates with similar incident reports fared much better than petitioner's own Caucasian ethnic group.

Petitioner contends that he has exhausted his administrative remedies and attaches documentation proving it.[25]

As relief, he requests the restoration of the 324 days non-vested good time credits; restoration of his telephone and email privileges; and reimbursement of the cost of pursuing this case through the BOP's administrative remedy process and federal court.[26]

---

[21] Dkt.# 1 at 6 – 7.

[22] Dkt.# 1 at 7.

[23] Dkt.# 1 at 7 – 8.

[24] Dkt.# 1 at 7.

[25] Dkt.# 1-2, 1-3, 1-4, and 1-5.

[26] Dkt.# 1 at 11.

**B. Respondent's Motion to Dismiss or For Summary Judgment and Response**

In its dispositive motion, the respondent asserts that on April 7, 2013, while incarcerated at FCI Fort Dix, petitioner received an incident report for Possession, Manufacture or Introduction of a Hazardous Tool (two cell phones and three cell phone chargers).[27]

The Incident Report indicated that at approximately 11:45 a.m., when searching cell 209, two cell phones and three cell phone chargers[28] were found inside a false bottom on petitioner's locker. The phones were described as "a virgin mobile (Kyocera) and . . . . a LG smart phone with Google."[29] Later that day, petitioner was given a copy of the Incident Report[30] and was advised of his rights by a staff member performing the investigation into the incident.[31] Petitioner responded "[n]o comment, Sir."[32] The investigator noted that based upon the evidence, petitioner was properly charged.[33]

The following day, a UDC hearing was held.[34] During the UDC hearing petitioner stated "I admit to it, it is my phone. The only thing wrong [with the incident report] is they found 2 chargers instead of 3. I found 1 phone in the bathroom that belonged to . . . [another inmate]. My stepdad has cancer that is why I had the smart phone."[35] Thereafter, the incident report was

---

[27] See Dkt.# 11-2.

[28] See Dkt.# 11-2, §11 at 1.

[29] Id.

[30] Id., §§15 and 16 at 1.

[31] Id., §23 at 2.

[32] Id., §24 at 2.

[33] Id., §26 at 2.

[34] Id., §21 at 1.

[35] Id., §17 at 1.

forwarded to the DHO for further processing,[36] and petitioner was given a form Notice of Discipline Hearing Before the DHO.[37] He was also provided a form advising him of his DHO hearing rights,[38] but declined to request a staff representative or call any witnesses.[39] Petitioner's waiver of his right to request a staff representative and witnesses was documented later in the DHO report.[40]

At the April 18, 2013[41] [sic] DHO hearing, petitioner admitted that the one phone was his;[42] that he had received it from a friend who left; and that he took the other phone after seeing another inmate leave it in the bathroom. He denied having paid anything for the phone.[43]

In arriving at his decision, the DHO relied upon the written Incident Report; the investigation; an April 7, 2013 staff memorandum; and copies of a black and white photo.[44] The DHO found, based upon the greater weight of the evidence, that petitioner committed the prohibited act of a Code 108 violation, Possession, Manufacture, or Introduction of a Hazardous Tool.[45]

Accordingly, the DHO imposed the following sanctions: disallowance of 40 days good conduct time; forfeiture of 324 days of non-vested good conduct time; 30 days disciplinary

---

[36] Id., §§18-19.

[37] See Dkt.# 11-3.

[38] See Dkt.# 11-4.

[39] See Dkt.# 11-3.

[40] See Dkt.# 11-5 at §§ II(A) and III(C).

[41] The DHO hearing was held on April 17, 2013. See Dkt.# 11-5, §I(B) at 1.

[42] See Dkt.# 11-5.

[43] Id., §III(B).

[44] Id., §III(D) at 2.

[45] Id.

segregation; 90 days loss of commissary and visiting privileges; 5 years loss of e-mail and phone privileges; and a $17.58 monetary fine.[46] The DHO noted that the sanctions were imposed because the action of any inmate in possessing, manufacturing, or introducing a hazardous tool into any correctional institution threatens the safety and security of the inmate and the entire institution.[47] The DHO further noted that inmates had previously used cell phones to effectuate escapes; seriously injure other inmates; or even murder staff members.[48] The DHO stated that cell phones fall within the hazardous tool classification because cell phones have been used to facilitate escapes; introduce contraband; and enable inmates to make contact with outside individuals to engage in potentially illicit or illegal activities, unbeknownst to BOP staff.[49] The DHO further explained that the sanctions were imposed to demonstrate the seriousness of the offense to the inmate and others at the institution.[50]

Petitioner was provided a copy of the final DHO report on April 29, 2013.[51]

The respondent agrees that petitioner's appeal of the disciplinary action fully exhausted his administrative remedies.[52]

The respondent contends that the petition should be denied and dismissed, or summary judgment granted in its favor, because

1) petitioner has not alleged, let alone shown, that the disciplinary hearing that resulted in his sanctions did not comport with procedural requirements; and

---

[46] See Dkt.# 11-5, §VI at 3.

[47] Id., §VII at 3.

[48] Id.

[49] Id.

[50] Id.

[51] Id., §IX at 3.

[52] See Dkt.# 11-1, ¶ 5 at 1.

2) petitioner's challenge to the DHO's sanctions based on equal protection fail, because he has not shown that he was treated differently from others with whom he is similarly situated, or that the unequal treatment was the result of intentional or purposeful discrimination.

**C. Petitioner's Response**

In his reply, the petitioner reiterates his arguments and attempts to refute the respondent's on the same. He requests that the Court strike the respondent's motion as being non-responsive and "illegally insufficient," order an evidentiary hearing to resolve this matter, or "sua sponte grant Mr. Wheeler the relief that he seeks."

### IV. Standard of Review

**A. Motion to Dismiss**

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir.1992) (citing 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1356 (1990)). In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. Mylan Labs, Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993); see also Martin, 980 F.2d at 952.

The Federal Rules of Civil Procedure "require only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). Courts long have cited the "rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [a] claim which would

entitle him to relief." Conley, 355 U.S. at 45-46. In Twombly, the United States Supreme Court noted that a complaint need not assert "detailed factual allegations," but must contain more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." Conley, 550 U.S. at 555 (citations omitted). Thus, the "[f]actual allegations must be enough to raise a right to relief above the speculative level," id. (citations omitted), to one that is "plausible on its face," id. at 570, rather than merely "conceivable." Id. Therefore, in order for a complaint to survive dismissal for failure to state a claim, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." Bass v. E.I. DuPont de Nemours & Co., 324 F.3d 761, 765 (4th Cir.2003) (citing Dickson v. Microsoft Corp., 309 F.3d 193, 213 (4th Cir.2002); Iodice v. United States, 289 F.3d 279, 281 (4th Cir. 2002)). In so doing, the complaint must meet a "plausibility" standard, instituted by the Supreme Court in Ashcroft v. Iqbal, where it held that a "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009). Thus, a well-pleaded complaint must offer more than "a sheer possibility that a defendant has acted unlawfully" in order to meet the plausibility standard and survive dismissal for failure to state a claim. Id.

**B. Summary Judgment**

The Supreme Court has recognized the appropriateness of Rule 56 summary judgment motions in habeas cases. See Blackledge v. Allison, 431 U.S. 63, 80 (1977). So too, has the Fourth Circuit Court of Appeals. Maynard v. Dixon, 943 F.2d 407 (4th Cir. 1991). Pursuant to Rule 56c of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the

affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

Motions for summary judgment impose a difficult standard on the moving party; for it must be obvious that no rational trier of fact could find for the nonmoving party. Miller v. Federal Deposit Ins. Corp., 906 F.2d 972, 974 (4th Cir. 1990). However, the "mere existence of a scintilla of evidence" favoring the nonmoving party will not prevent the entry of summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242-252 (1986). To withstand such a motion, the nonmoving party must offer evidence from which a "fair-minded jury could return a verdict for the [party]." Id. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1128 (4th Cir. 1987).

Such evidence must consist of facts which are material, meaning that they create fair doubt rather than encourage mere speculation. Anderson, 477 U.S. at 248. It is well recognized that any permissible inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. Matsushita Elec. Industrial Co. V. Zenith Radio Corp., 475 U.S. 574, 587-88 1986.

## V. Discussion

The Federal Bureau of Prisons ("BOP") is charged with the responsibility of administering the federal prison system. See 18 U.S.C. § 4042. Included in this duty is the obligation to provide for the protection, instruction and *discipline* of all persons charged with or convicted of offenses against the United States. § 4042(a)(3) (emphasis added). Therefore, the BOP has promulgated rules for inmate discipline. See 28 C.F.R. § 541.10, *et seq.*

In Wolff v. McDonnell, 418 U.S. 539, 556 (1974), the Supreme Court of the United States found that although prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights that are due a defendant in a criminal proceeding do not apply in prison disciplinary proceedings, "there must be mutual accommodation between institutional needs and objectives and the provisions of the Constitution." Therefore, the Supreme Court found that an inmate was entitled to some due process protections during a DHO hearing. Id. The application of such procedural due process is aimed at ensuring that disciplinary action that may result in the loss of GCT credit is not arbitrary or capricious. Where a prison disciplinary hearing may result in the loss of good time credit, Wolff holds that due process requires the following:

    1. giving the prisoner written notice of the charges at least 24 hours before he appears for his disciplinary hearing;

    2. providing the prisoner a written statement by the fact finders as to the evidence relied on and reasons for the disciplinary action;

    3. allowing the prisoner to call witnesses and present documentary evidence in his defense, when permitting him to do so will not be an undue hazard to institutional safety or correctional goals;

    4. permitting the prisoner the aid of a fellow prisoner, or if that is forbidden, aid from staff or a competent inmate designated by staff, if the prisoner is illiterate or the complexity of the issue makes it unlikely that the prisoner will be able to collect and present the evidence necessary for an adequate comprehension of the case; and

    5. providing impartial fact finders.

On the other hand, an inmate does not have a right to confrontation and cross-examination, or a right to counsel. Id. at 567, 570. Disciplinary decisions comport with the requirements of procedural due process when there is "some evidence" to support the disciplinary decision by the fact finder. Superintendent, Mass. Corr. Institution v. Hill, 472 U.S. 445, 117 S.Ct. 1584 (1985). The Supreme Court has not, however, extended such procedural due

process protections to a UDC hearing where only the loss of minor privileges is at stake. See Wolff at 572, n.19 ("We do not suggest, however, that the procedures required by today's decision for the deprivation of good time [or imposition of disciplinary confinement] would also be required for the imposition of lesser penalties such as the *loss of privileges*.") (emphasis added).

## A. Bias, Racial Animus, and Retaliation in Petitioner's DHO Hearing

In this case, it is undisputed that the petitioner received all of the due process safeguards delineated in Wolff.

Petitioner's claim is that he was unduly and unlawfully sanctioned for the Code 108 offense, because of racial discrimination on the part of the African-American DHO, whose personal bias and prejudice against Caucasian inmates caused him to punish petitioner more severely than he would have punished an African-American or Hispanic inmate.

As a preliminary matter, prisoners' claims of bias and retaliation are to be viewed with skepticism. Myrieckes v. Caraway, 2012 WL 527585 *4 (D. Md. Feb. 16, 2012) citing Cochran v. Morris, 73 F.3d 1310, 1317 (4th Cir. 1996). Petitioner's allegation that the DHO was biased against him as a Caucasian, because of what Colorado inmates who were members of the Aryan Brotherhood there might have done with cell phones is merely a conclusory allegation. Although *pro se* petitions are to be liberally construed, as set forth in Haines v. Kerner, 404 U.S. 519 (1972), habeas petitions must meet heightened pleading requirements. McFarland v. Scott, 512 U.S. 849 (1994). "[N]otice pleading is not sufficient, for the petition is expected to state facts that point to a real possibility of constitutional error." Blackledge v. Allison, 431 U.S. 63, 75, n. 7 (1977) (internal quotations omitted). A habeas petitioner must come forth with evidence that a

claim has merit. Nickerson v. Lee, 971 F. 2d 1125, 1136 (4th Cir. 1992), cert. denied, 507 U.S. 923 (1993). Unsupported, conclusory allegations do not entitle a habeas petitioner to relief. Id.

As to the petitioner's claims that his sanctions were extreme, as noted *supra*, the BOP is charged with the responsibility of administering the federal prison system. See 18 U.S.C. §4042. Included in this duty is the obligation to provide for the protection, instruction and **discipline** of all persons charged with or convicted of offenses against the United States. §4042(a)(3)(emphasis added). Therefore, the BOP has promulgated rules for inmate discipline. See 28 C.F.R. § 541.10, *et seq.,* and the authority to administer prison discipline is within the discretion of the BOP.

Moreover, even if this Court could review the sanctions imposed in a prison disciplinary proceeding, the undersigned does not believe that they were extreme. First they are within the sanctions authorized by 28 C.F.R. §541.13. Second, it is apparent from the incident report that the petitioner had been found with not merely *one* prohibited cell phone, but *two*. A cell phone is considered to be a "hazardous tool" and an offense of the Greatest Severity in the BOP. Petitioner was well aware that it was prohibited, because he had been repeatedly advised of it during his two stays at FCI Fort Dix,[53] and had taken great pains to conceal the phones in a false bottom in his locker. Finally, as the DHO noted, "the sanctions were imposed because the action

---

[53] Petitioner was incarcerated at FCI Fort Dix from March 11, 2008 – January 6, 2011, and then again from November 11, 2011 - May 29, 2013. See Dkt.# 11-1, ¶29 at 3. Well before his first arrival, a May 5, 2005 memorandum was issued to all FCI Fort Dix inmates, advising that possession of a cell phone was a violation of Code 108. See Robinson v. Warden, FCI Fort Dix, 2007 WL 1140462 *4 (D.N.J. Apr. 16, 2007) *aff'd* Robinson v. Warden, 250 F. App'x 462 *2 (3rd Cir. 2007). On October 4, 2006, the Warden issued another memorandum to the entire prison population, again warning that cell phone possession constituted a Code 108 violation. See Myrieckes, *supra* at *2; Walden v. Longley, 2012 WL 4971885 *1 (W.D. Pa. Sep. 13, 2012). Further, FCI Fort Dix inmates were repeatedly advised through town hall meetings and various other memoranda that if they were caught with a cell phone, they would be charged with a Code 108 violation. Walden, *supra* at *1. Finally, on December 28, 2009, while petitioner was housed at FCI Fort Dix, the Warden issued another memorandum advising that cell phone possession constituting a Code 108 violation. Myrieckes, *supra* at *2. After their issuance, these memoranda were kept in the inmate library and posted "throughout the institution." Id. Accordingly, there is no question but that petitioner was well aware that possessing a cell phone was considered a Code 108, a prohibited act of the Greatest Severity Level.

of any inmate in possessing, manufacturing, or introducing a hazardous tool into any correctional institution threatens the safety and security of the inmate and the entire institution;[54] inmates had previously used cell phones to effectuate escapes; seriously injure other inmates; or even murder staff members;[55] and that cell phones fall within the hazardous tool classification because cell phones have been used to facilitate escapes; introduce contraband; and enable inmates to make contact with outside individuals to engage in potentially illicit or illegal activities, unbeknownst to BOP staff.[56] Clearly, prison rules and regulations are created for safety and security reasons. Therefore, allowing an inmate to circumvent those restrictions without severe recourse would jeopardize the orderly running of the institution.

Furthermore, in cases analogous to this one, this court and others have refused to entertain claims that an inmate's disciplinary sanctions were too harsh. See Valenteen v. Driver, Civil Action No. 1:08-cv-89, 2009 WL 304835 *3 (N.D. W.Va. Feb. 6, 2009); Sanchez v. Martinez, Civil No. 1:CV-09-01350, 2009 WL 3731752 *4-5 (M.D. Pa. Nov. 6, 2009) (the sanctions that may be imposed upon a finding of guilt of a "greatest category offense" include, *inter alia,* forfeiting earned statutory good conduct time or up to 100% of non-vested good conduct time, up to sixty days of disciplinary segregation, and loss of privileges. 28 CFR §541.13).

**B. Equal Protection**

The Equal Protection Clause of the Fourteenth Amendment provides that "[n]o State shall … deny to any person within its jurisdiction the equal protection of the laws." U.S. Const.

---

[54] Id., §VII at 3.

[55] Id.

[56] Id.

Amend. XIV, §1. To be successful on an equal protection claim, the plaintiff must demonstrate "that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination." Morrison v. Garraghty, 239 F. 3d 648, 654 (4th Cir. 2001). If the plaintiff makes such showing, "the court proceeds to determine whether the disparity in treatment can be justified under the requisite level of scrutiny." Id.; see also Middleton v. Zych, Civil Action No. 7:12-cv-00266, 2012 U.S. Dist. LEXIS 143741 *2 (W.D. Va. Oct. 4, 2012) citing Morrison, 239 F.3d at 654.

Here, the plaintiff has failed to show that he was treated differently from others with whom he was similarly situated or that his treatment was a result of intentional or purposeful discrimination. Petitioner's allegation that several black inmates received lesser sanctions than he did, in addition to being an unsupported allegation, proves nothing. He has failed to offer any evidence at all to show that any other Caucasian inmate received a similarly harsh sanction, let alone that Caucasian inmates as a group always received harsher sanctions for the same offense. Walden, *supra* at *8. It is simply not true that all African-American FCI Fort Dix inmates found guilty of the same offense have always received more lenient sanctions than that petitioner received, and petitioner's sanctions are greater in some respects but less in others, compared to what at least one other Caucasian inmate at FCI Fort Dix received for the same offense.[57] Moreover, a careful review of the record reveals that petitioner's own May 12, 2013 BP-10 on the issue contradicts the claim made in his petition that Hispanic inmates with similar incident

---

[57] See Ryan v. Scism, 474 Fed. Appx. 49 (3rd Cir. 2012)(African-American inmate at FCI Fort Dix found guilty of a Code 108 cell phone possession in 2010 received DHO sanctions of disallowance of 40 days good conduct time; forfeiture of 432 days of non-vested good conduct time, 60 days of disciplinary segregation; and 18 months' loss of phone privileges); see also Del Toro v. Longley, 2013 U.S. Dist. LEXIS 49685 (W.D. Pa. Feb. 21, 2013)(FCI Fort Dix inmate found guilty of Code 108 cell phone possession received disallowance of 40 days good conduct time; disciplinary segregation for 30 days; forfeiture of 378 days of non-vested good conduct time; 60 days loss of commissary privileges; 18 months loss of email and phone privileges; and loss of visitation privileges for 60 days). While not so stated in the opinion, a review of the BOP's Inmate Locator indicates that inmate Del Toro is a Caucasian.

reports fared much better than petitioner's Caucasian ethnic group. In that BP-10, petitioner states that when he arrived in the SHU for disciplinary segregation after the cell phones were discovered

> numerous inmates [were] already there for 108 shots. I asked what punishment was being given for them, there were 3 black inmates that had told me they were all given about the same punishment, 18 months phone and email loss, 40 to 80 good days taken, 30 days DS, and 60 to 90 days loss of visits and commissary. Over the next two weeks 4 more black inmates and one Spanish inmate went to DHO for 108 shots as well, 3 of the black inmates received about the same as the others while the 4th got a lesser punishment. **The Spanish inmate was given a much greater punishment of 5 years loss of phone and email while the rest of the punishment was roughly the same**. . .

Dkt.# 1-2 at 2 (emphasis added).

"Any number of reasons may exist to explain why . . . [another] inmate received no punishment . . . he may well have not been guilty of the same offense." Middleton, *supra* at *10. Indeed, as noted *supra,* petitioner's argument ignores the fact that he was found with not just one prohibited cell phone, but two. "Merely claiming that other prisoners received less severe punishment for the same violation . . . does not create an equal protection claim." Id. (citing Wooten v. Hogsten, No. 6:11cv190, 2012 U.S. Dist. LEXIS 63604 (E.D. Ky. May 7, 2012).

Accordingly, petitioner's argument falls far short of establishing the purposeful discrimination required to establish an equal protection claim. Moreover, petitioner has failed to show that he, as a Caucasian, is a member of protected class. Thus, he fails to state an equal protection claim and this claim must be dismissed with prejudice.

## VI. Recommendation

Based on the foregoing, the undersigned recommends that the respondent's Motion to Dismiss or for Summary Judgment (Dkt.# 10) be **GRANTED,** and the petitioner's §2241 petition be **DENIED and DISMISSED with prejudice**.

**Within fourteen (14) days** after being served with a copy of this Recommendation, **or by November 24, 2014**, any party may file with the Clerk of the Court, written objections identifying the portions of the Recommendation to which objections are made, and the basis for such objections. A copy of such objections should also be submitted to the United States District Judge. **Failure to timely file objections to the Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Recommendation.** 28 U.S.C. §636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

The Clerk of the Court is directed to mail a copy of this Report and Recommendation to the *pro se* petitioner by certified mail, return receipt requested, to his last known address as shown on the docket sheet. The Clerk of the Court is further directed to provide a copy of this Report and Recommendation to all counsel of record, as applicable, as provided in the Administrative Procedures for Electronic Filing in the United States District Court.

DATED: November 10, 2014.

/s/ James E. Seibert
JAMES E. SEIBERT
UNITED STATES MAGISTRATE JUDGE